**In re Raul Dante CALATAYUD, Debtor.**

**Gui GOVAERT, Trustee, Plaintiff,**

**v.**

**CENTRAL BANK, Defendant.**

**Bankruptcy No. 88–03556–BKC–TCB. Adv. No. 89–0019–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

March 10, 1989.

Robert C. Meyer, Haley, Sinagra & Perez, P.A., Miami, Fla., for plaintiff.

Gui Govaert, Miami, Fla., trustee.

Carmen Hernandez, Greenberg, Traurig, Hoffman, Lipoff, Rosen and Quentel, P.A., Miami, Fla., for defendant.

William Manker, Miami, Fla., for debtor.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff/chapter 7 trustee seeks avoidance under 11 U.S.C. § 548(a)(2) (constructively fraudulent transfer) of the debtor's hypothecation to the defendant bank on August 12, 1987 of three automobiles.[1] The then estimated value of the three cars was $14,485. (Ex. 20).

A week after the complaint was filed, the parties stipulated (CP 6) that "one of the two [sic] vehicles which are the subject to [sic] the adversary proceeding" had been sold, that the bank would sell the remaining vehicle, a BMW, and that the bank would hold the proceeds in escrow pending this decision.

The bank has answered and the matter was tried February 16. I now conclude that the trustee has failed to prove three of the four elements required under § 548(a)(2).

### Within Year Before Bankruptcy

 It is trustee's burden to prove that the transfer was made "within one year before the date of the filing of the petition". § 548(a). This debtor's petition was filed on September 7, 1988. (Case No. 88–

---

1. Count 3 of the Complaint (CP 1). At trial, the trustee abandoned his remaining three counts, (CP 14 at 17), and abandoned his allegation under § 548(a)(1) of actual fraud, (CP 14 at 3).

Although the transfer is alleged to have occurred both "on or about July 25, 1988" (CP 1

¶ 31) and "on or about August 12, 1987" (CP 1 ¶ 3), and the trustee's evidence (Ex. 5) is a hypothecation dated October 8, 1987, the parties' Pre–Trial Stipulation of Facts recites: "The liens on the vehicles are [sic] all filed on August 12, 1987." (CP 13 ¶ 7).

03556, CP 1). The parties stipulated that the court take judicial notice of the debtor's bankruptcy file. (CP 14 at 12 and 24).

The parties have stipulated that the liens were "all filed on August 12, 1987". (Pre–Trial Stipulation of Facts, ¶ 7). For the purposes of § 548, a transfer is made on the date it is perfected as to third parties. § 548(d)(1). Filing with the Department of Motor Vehicles perfects a vehicular lien in Florida, *Fla.Stat.* § 319.27(2).

For the purposes of § 548, therefore, this transfer occurred 13 months before the debtor filed for bankruptcy and is not actionable.

The trustee argues that because *Fla. Stat.* § 319.24(5)(a) entitles the owner of a liened vehicle to demand and receive release of the lien when it is satisfied, and because a $35,000 note partially secured by liens on the debtor's cars was satisfied on December 8, 1987, the lien ceased to exist on that date and was not reincarnated until April 26 and July 25, 1988 when subsequent advances were made to the debtor's wholly-owned corporation. (Trustee's Post Trial Memorandum at 1–3).

I reject this contention. The liens, which secured a line of credit, were *never* released. (Pre–Trial Stipulation of Facts, ¶ 21). Though the debtor demanded and obtained a release of the lien of a corporate van, the debtor never made a demand for release of the liens on *his* three cars. (CP 14 at 47). The Florida Statute is not self-effectuating and is totally irrelevant here.

### *Insolveney*

■ It is also trustee's burden to prove that the debtor was insolvent on the date the transfer was made, August 12, 1987. The only evidence offered to meet that burden was the following testimony of the debtor:

"Q In April of 1988 were your personal assets greater or lesser than the amounts that [sic] were obligated to pay?

"A Lesser.

"Q In July of 1988 were your assets greater or lesser than your obligations to pay?

"A Lesser." (CP 14 at 20).

·This was, respectively, eight and 11 months after the date of the transfer. However, the debtor's bankruptcy schedules which he personally prepared (CP 14 at 23, 25) the following month, on August 29, 1988, and swore to under penalty of perjury showed assets of $201,295 and liabilities of $128,258. (Case No. 88–03556, CP 1 Summary of Debts and Property).

This debtor's personal financial statement dated July 31, 1987, one month before the date of the transfer, which was *offered in evidence by the trustee* (Ex. 11), shows assets of $576,200 and liabilities of $70,700.

Though the debtor also testified at trial that Global International Courier, Inc., a corporation wholly owned by the debtor (Case No. 88–03556, CP 1 Schedule B–2, Item "t"), had a value in April 1988 of "basically zero" (CP 14 at 19), that corporation's balance sheet on July 31, 1987, one month before the transfer, showed assets of $130,742 and liabilities of $42,137. This balance sheet was prepared by a CPA from the "representation of management". The debtor was then Global's president and only operating officer. This exhibit was also *placed in evidence by the trustee.* (Ex. 1).

I reject the debtor's unsubstantiated and self-serving testimony at trial, because it is in direct conflict with his earlier bankruptcy schedules as well as with his previous documented declarations, trustee's exhibits 1 and 11. The trustee has not carried his burden of proving that the debtor was insolvent on August 12, 1987, the date of the alleged fraudulent transfer.

### *Reasonably Equivalent Value*

■ It is, finally, trustee's burden to prove that the debtor "received less than a reasonably equivalent value in exchange for such transfer". § 548(a)(2)(A). Though defendant never loaned any money directly to the debtor, it established a line of credit for his wholly-owned export corporation, Global International Courier, Inc., and on several occasions extended it credit well beyond the value of the debtor's three cars.

The corporate obligations were all personally guaranteed by the debtor and when he filed for bankruptcy he admittedly owed defendant $20,300 on that guaranty. (Case No. 88–03556, CP 1, Schedule A–3). Partially collateralizing a personal obligation is the equivalent of partially paying a personal obligation. In either event, the debtor receives full equivalent value by the pro tanto reduction of his personal obligation.

I am unpersuaded by the trustee's unsupported argument that no value was given by the bank, because:

"Fresh cash was not received by Global or the debtor as the funds from the notes were used to pay off existing debts." (Trustee's Post Trial Memorandum at 3).

For the purposes of § 548:

" 'value' means ... satisfaction or securing of a present or antecedent debt of the debtor...." § 548(d)(2)(A).

We need not, therefore, consider the trustee's remaining argument that furnishing collateral for his corporation's debts afforded the debtor no equivalent value. But even if the debtor had not personally guaranteed the corporate debts, it is well-settled that a debtor need not benefit directly in order to receive reasonably equivalent value through a transfer. *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 829–30 (5th Cir.1959), *cert. denied*, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2nd Cir.1981).

*Mayo* and *Rubin* applied § 67d of the former Act. However, neither the legislative history nor any court has suggested that a different rule applies under the present § 548(a)(2)(A).

### Conclusion

As is required by B.R. 9021(a), a separate judgment will be entered dismissing the complaint with prejudice. Costs may be taxed on motion.

DONE and ORDERED.